JUAN ALEMAN, Plaintiff-Appellant, v. JOSEPH CARRILLO et al., Defendants-Appellees.—MEXICAN-AMERICAN SOCIETY OF FAIRMONT CITY, Plaintiff-Appellant, v. MEXICAN-AMERICAN CLUB, INC., Defendant-Appellee.

Fifth District   No. 75-137

Opinion filed April 21, 1977.—Supplemental opinion filed on denial of rehearing June 28, 1977.

Jerome J. Schlichter and David J. Letvin, both of Cohn, Carr, Korein, Kunin and Brennan, of East St. Louis, for appellant.

John M. Ferguson, of Belleville, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiffs appeal from a judgment of the circuit court of St. Clair County finding the issues in favor of the defendant in a case in which plaintiffs contested the validity of the dissolution of a not-for-profit corporation known as "Mexican-American Society of Fairmont City, Illinois."

Plaintiff Mexican-American Society of Fairmont City (herein referred to as the "Society") was incorporated in 1947 pursuant to the Illinois General Not-For-Profit Corporation Act (Ill. Rev. Stat. 1975, ch. 32, par. 163(a) et seq.). The purpose of the Society was to provide an organization to assist the Mexican-American community in a variety of ways, including but not limited to social, intellectual, and economic advancement.

The original Society consisted of 45 founding members who adopted a constitution and bylaws in accordance with section 163(a)(8) of the Not-

for-Profit Corporation Act. The original constitution and bylaws were written in Spanish, and translated into English for the purposes of this lawsuit.

On May 13, 1968, the Society held its periodic meeting. A motion to reorganize the Society to a business corporation was adopted by 20 members attending the meeting. The motion stated:

"The May 13, 1968 meeting of the Mexican-American Society of Fairmont City passed a motion that the organization be made into a profit organization of shares for twenty members in good standing. Every member will be given an equal share. Listed below are the names of members who are to receive the shares."

The signatures of the 20 members follow, and the document was notarized by the accountant. A certificate of dissolution of the corporation was thereafter issued by the Secretary of State.

The Mexican-American Club, Inc., was then incorporated as the business corporation to succeed the Society. In accordance with the motion to reorganize, the 20 members whose signatures appear on the motion received equal shares in the corporation.

On August 10, 1972, the plaintiff Juan Aleman filed a suit, T.C. No. 72—2152, against Joseph Carillo, Jose M. Roque, Justino Martinez, Antonio Rangel, and Mexican-American Club, Inc., alleging that the individual defendants fraudulently and illegally dissolved a not-for-profit corporation known as "Sociedad Mexican American de Fairmont City, Illinois" and wrongfully converted it into a corporation for profit, namely, the defendant Mexican-American Club, Inc. Plaintiff's suit asked the court to hold that the individual defendants were illegally elected and that the incorporation of the defendant Mexican-American Club, Inc., be held illegal and void.

On June 13, 1974, the trial court, after hearing the evidence, made complete findings of fact and conclusions of law and rendered judgment in favor of the defendants and against the plaintiff.

Appellant Aleman in his brief filed in this court has not questioned the validity of the judgment against him, so the judgment in favor of the defendants and against plaintiff Aleman in the trial court in Cause No. 72—2152 must be affirmed.

On June 10, 1974, in a suit styled "Mexican-American Society of Fairmont City, Illinois, an Illinois Corporation v. Mexican-American Club, Inc., a corporation," trial court No. 74—L—892, the plaintiff claimed that it was a nonprofit organization first organized in August of 1941, that the defendant was a business corporation incorporated on June 10, 1968; that plaintiff was the owner in fee of certain premises.

Plaintiff further alleged that on June 10, 1968, the defendant wrongfully entered the above premises and has withheld and continues to withhold

possession of said property from plaintiff, claiming a title interest in the property.

Defendant filed a motion to dismiss, claiming the plaintiff lacked legal capacity to sue because the plaintiff was dissolved as a general not-for-profit corporation on May 29, 1969. Attached to the motion was a certificate of dissolution signed by the Secretary of State.

In answer to defendant's motion plaintiff filed a certified copy of a judgment order of the circuit court of St. Clair County cancelling the articles of dissolution of plaintiff and reinstating the plaintiff to corporate status. The judgment ordered the Secretary of State to expunge from his office the articles of dissolution and to "do such other things as are necessary" to show that the plaintiff is a duly organized and existing corporation.

The suit from which this judgment emanated was styled "Mexican-American Society of Fairmont City, Illinois, Juan Cisneros and Abraham Aleman v. Secretary of State of Illinois," No. 73—MR—2453. Plaintiffs in this action were Juan Cisneros, Abraham Aleman, and the Mexican-American Society of Fairmont City. Both of these individuals were founding members of the Society, and members in good standing at the time of the reorganization to the business corporation. Both received stock in the Mexican-American Club, Inc., in exchange for their interest in the defendant not-for-profit corporation.

The defendant was the Secretary of State of Illinois. The nature of this action was to vacate the articles of dissolution of the Society filed in 1969 and reinstate the Society. It is important to note that neither the Mexican-American Club, Inc., nor any of its incorporators were parties to this suit. The Secretary of State entered a consent to judgment and the court ordered the articles of dissolution cancelled.

In finding in favor of the defendant in case No. 74—L—892 the trial court found:

"8. The second suit, No. 74—L—892, was filed by Mexican-American Society of Fairmont City, Illinois, an alleged Illinois not-for-profit corporation.

9. By appropriate affirmative defense in its responsive pleading, defendant, Mexican-American Club, Inc., challenged the legal capacity of Mexican-American Society of Fairmont City, Illinois to bring and maintain this suit, alleging that said not-for-profit corporation had been dissolved.

10. The Court finds that said not-for-profit corporation was duly dissolved by the Secretary of State of Illinois in 1969; the Court further finds that an attempt was made by certain individuals, Juan Cisneros and Abraham Aleman, proporting (sic) to act for and on behalf of Mexican-American Society of Fairmont City, Illinois,

during the period subsequent to the filing of the first suit herein, No. 72—2152, and the filing of the second suit, No. 74—L—892, filed a suit in this Court docketed as No. 73—MR—2453, against the Secretary of State of Illinois, as defendant, in which said cause a proported (sic) judgment was entered on September 10, 1973 ordering that the Articles of Dissolution of the not-for-profit corporation, Mexican-American Society of Fairmont City, Illinois, filed on or about May 29, 1969 be cancelled upon the filing of annual reports and payment of fees.

11. No notice of the pendency of said suit or the hearing resulting in the judgment of September 10, 1973 was given to any of the defendants in this cause.

12. The Court finds that there is no express authority or power granted in the Illinois General Not-For-Profit Act conferring authority in the courts of Illinois to order reinstatement of a not-for-profit corporation and the courts do not have any general powers with respect to corporations, which are creatures of the legislature.

13. The Court was without jurisdiction of the subject matter in the cause docketed herein as 73—MR—2453 to enter the judgment ordering the Secretary of State to vacate or cancel the Certificate of Dissolution and said judgment is therefore null, void and of no force and effect.

14. Mexican-American Society of Fairmont City, Illinois did not exist as a not-for-profit corporation in 1974 and had or has no legal capacity to bring or maintain the suit docketed as 74—L—892."

The judgment entered by the trial court in case No. 73—MR—2453 was a consent judgment. A consent judgment is defined in 49 C.J.S. *Judgments* §173, at 308 (1947):

"A judgment by consent of the parties is a judgment the provisions and terms of which are settled and agreed to by the parties to the action in which it is entered, and which is entered of record by the consent and sanction of the court; it may be more briefly defined as a contract of the parties acknowledged in open court and ordered to be recorded, an agreement of the parties entered of record with the approval of a court of competent jurisdiction, or a solemn contract or judgment of the parties put on file with the sanction and permission of the court. A consent judgment is not a judicial determination of any litigated right, and it is not the judgment of the court, except in the sense that the court allows it to go upon the record and have the force and effect of a judgment; it is merely the act of the parties consented to by the court."

■■ The judgment of the trial court in case No. 73—MR—2453 shows on its face that it was a consent decree. It was binding only on those who consented to its entry. It could not operate as an adjudication or be pleaded or shown in bar of any subsequent proceedings involving parties who were not privy to the agreement. This decree was not procured for the purpose of securing a true adjudication. Its purpose was to use the court as a means to an end. It was an attempt to deny real parties in interest their rights by failing to join them in the proceeding. Had all of the facts been brought to the attention of the trial court, it would have never entered the judgment.

Much of what was said in *Freasman v. Smith*, 379 Ill. 79, applies to this case:

"That decree is most unusual. It is a monstrosity on its face. The record justifies the conclusion that in procuring the entry of that decree the court was not used for the purpose of obtaining a judicial pronouncement. It was resorted to only as a convenience and as a means to an end. The decree first establishes the instrument as the last will of the testator and then decrees that nothing shall pass under it, but that the entire estate shall descend to his heirs-at-law, as intestate property. It was an abortive attempt to bar the admission to probate of any other will of the testator on petition of others who were not parties to the suit. Undoubtedly its provisions were never disclosed to the court. When these provisions, from which its purposes clearly appear, were brought to the attention of the court in any manner, the court, for its own protection, and for the maintenance of its own proper dignity, should have set it aside on its own motion.

The court could not, however, vacate the decree on motion of appellant. His rights were in nowise prejudiced or injuriously affected by its entry. It shows on its face that it was a consent decree. It was binding only on those who consented to its entry. It could not operate as an adjudication or be pleaded or shown in bar of any subsequent proceedings for the probate of another will shown to have been properly executed by the deceased. For such purpose it was an absolute nullity and without force and effect.

* * *

The record in this case shows that at the time the decree of December 2 was entered, there were no issues before the court. There was no contest. The court had no power to enter a decree in the form of that decree, except with the consent of the parties. Obviously the court could not enter a decree establishing the instrument as the last will and testament of the deceased and by the same decree direct that the entire estate descend as intestate

property and not under the will. Such a decree could only be entered by consent. * * *

In *People ex rel. Graff v. Chicago, Burlington and Quincy Railroad Co.*, 247 Ill. 349, the court said: 'To bring a case within the rule that a former judgment is *res judicata* of the cause of action it must appear that such former adjudication was upon a matter contested between the parties, * * * and if a suit is devised for the purpose of having a certain judgment entered, it will not be binding upon the public or those who are not parties to the scheme adopted for that purpose.'

* * *

It follows that the decree of December 2 having been entered as a consent decree, it in no way prejudiced or injuriously affected the rights of appellant. He was neither a party nor privy to any party to that suit. It was not a decree pronounced by the court in the exercise of judicial function, but was only a contract between the parties to it. It is wholly ineffective as to all persons not parties to it. As to appellant, it was not an adjudication and he is not in any sense affected by it." 379 Ill. 79, 86-88.

We have carefully considered the finding of the trial court that the court in case No. 73—MR—2453 was without jurisdiction of the subject matter. However, we do not pass on that finding because the judgment in that case would have been totally ineffective as to the appellees in this case even if the trial court erred in its finding. Accordingly, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

EBERSPACHER and JONES, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

■■ The validity of the quitclaim deeds referred to in the petition for rehearing were not challenged in the trial court. There were no findings or conclusions by the trial court with respect to their validity and therefore this is not a proper issue to raise in this court. In addition, plaintiffs have no standing in the trial court or in this court to litigate that issue.

The petition for rehearing is denied.

JONES and EBERSPACHER, JJ., concur.